HEARD NOVEMBER TERM, 1875.

## JACOBS *vs.* WOODSIDE.

Where a debtor becomes administrator of his creditor, the debt is extinguished at law, and becomes assets in his hands.

BEFORE COOKE, J., AT , MARCH TERM, 1874.

Action by R. H. Jacobs, as administrator *de bonis non*, with the will annexed, of E. O. Jacobs, deceased, against John L. Woodside and Thomas Goldsmith.

The case is as follows :

The action was on a sealed note for $4,408.50, dated October 20, 1860, payable twelve months after date to E. O. Jacobs, executor, and signed by John Charles, John L. Woodside and Thomas Goldsmith. E. O. Jacobs was executor of the last will and testament of his father, William Jacobs, deceased, and in that capacity took the note in question. Before the maturity of the note, E. O. Jacobs died, and letters of administration, with the will annexed, upon his estate were granted to John Charles, the principal on the note. John Charles continued as administrator of the estate from 1861 to April 1, 1872, when his letters were revoked and administration *de bonis non*, with the will annexed, was granted to the plaintiff. The note was turned over to the new administrator and this suit soon after instituted.

It was contended on the trial, by the defendant's attorneys, that the note in question became cash in the hands of John Charles as soon as he became administrator of the estate of the payee, and that he could be made liable therefor only upon his administration bond, and that the sureties upon said note had been discharged by operation of law and were not liable. It was also shown upon the trial that John Charles was perfectly solvent at the time of the grant of letters of administration, but that he and his sureties were hopelessly insolvent at the time his letters were revoked. The presiding Judge was requested by the defendant's counsel to charge as follows, to wit:

1. That if the jury found from the testimony that John Charles was principal, and that John L. Woodside and Thomas Goldsmith were sureties only, and that John Charles was appointed administrator of the estate of the payee, E. O. Jacobs, deceased, and was solvent at the time, then the debt is extinguished and this action cannot be maintained.

2. That if they find the facts as above stated, then the appointment of John Charles as administrator operated as a discharge of the sureties.

The request was denied, and His Honor instructed the jury as follows:

The law in this case is in a nutshell. It is embraced in this: take the note sued on and calculate the interest for one year and

add it to the principal, and calculate the interest on this for twelve years four months and twenty days, it will make $8,806.99. This should be your verdict. Take the record and find it.

The verdict was for $8,806.99.
The defendants appealed.

*Wells*, with whom was *Cothran*, for appellants:

It is a principle of the common law, as old as the year books, that when an obligee makes an obligor his executor, the same hand being to receive and pay out, the debt is discharged.—Note to *Cheetham* vs. *Ward*, 1 B. & P., 630; *Wankford* vs. *Wankford*, 1 Salk., 299; *Freakley* vs. *Fox*, 9 B. & C., 130.

This common law principle, however, has been held to apply only to cases when the obligor becomes the *executor*, and not to those when he becomes the administrator of the obligee; the reason given being that in the one case the suspension is the voluntary act of the creditor, and therefore the action is forever gone; but in the other case the suspension is by act of law and only temporary in its nature—a distinction seemingly without any difference in principle, since in both cases the same hand is to receive and ought to pay out. Equity, however, avoids the absurdity of requiring a man to sue himself, by holding, with more justice, not that the debt is discharged, but that it is assets in the hands of the executor; or, as the old books quaintly express it, that the debt due by the debtor executor hath been paid to him by himself.—*Berry* vs. *Usher*, 11 Ves., 90; *Simmons* vs. *Guteridge*, 13 Ves., 264.

This principle of equity would seem to apply as broadly to administrators as to executors. In our own decided cases there is no distinction made between the two classes. In *Schnell* vs. *Schrœder*, (Bail. Eq., 335,) it is said:

"But all the authorities concur that a debt due by an administrator to his intestate's estate is assets in his hands."

And again, in *Griffin* vs. *Bonham*, (9 Rich. Eq., 71,) Chancellor Dargan says for the entire Court:

"It may be laid down as a rule of universal application that whenever the character of payor and payee of any debt or obligation is blended in the same individual, *by operation of law* the debt is paid, and the amount is cash in hand on the accounts of the payee to the credit of the party entitled to the fund. *Eo instanti*

it is due by the payee, and will be so considered in every transaction relative to the matter."

Language cannot be broader and more general; and, taken in its broad, clear sense, unrestricted and just as it stands, it would be far more in accordance with the principles of equity and good conscience, especially when there are creditors, to apply it to administrators than to executors. For in the case of an executor, the creditors would have only the debtor-executor to look to, at least so far as his own indebtedness to his testator was concerned, while in the case of an administrator they would have the additional security of the administration bond; and if that was insufficient, through any dereliction of the officer taking the same, they would have that officer's own bond to fall back upon. Nay, in the appointment of an executor, neither creditors nor legatees could possibly have a voice *pro* or *con*, while in the appointment of an administrator the distributees would *certainly* have, and the creditors *might* have, a voice in the matter, and *all* would have it in their power to secure a bond good beyond peradventure. So far, then, as reason and justice are concerned, the language used by the Chancellor is even more applicable to administrators than to executors. But to put the matter beyond all doubt, the Chancellor goes on to say:

"As a consequence of this principle, whenever an executor *or administrator* is indebted to his testator or intestate, the amount for which he is indebted *and then due* will be considered cash in hand at the moment when he assumes upon himself the administration. If the debt be *not due* at the commencement of the administration, it will be cash on account, to the credit of the estate, *whenever it falls due in the course of the administration.*"

So far, then, as these authorities go, administrators and executors are placed upon precisely the same footing. Let us, then, go a step further and consider these two cases in the light of the construction placed upon them by this Court in the late case of *Clowney* vs. *Cathcart*, 2 S. C., 395. There it is held that the debt may or may not be considered assets, at the option of the creditors and distributees. The decision in that case was eminently just and proper. The indebtedness was incurred after the death of the intestate, and at a sale of the intestate's property, made under order of Court, one of the administrators was the purchaser; the other was his surety, and the debt was secured by mortgage. It came into the hands of the principal and under his control, not by operation of law, but by express order of the Court of Equity.

Furthermore, it was by him transferred as a bond and mortgage to one of the creditors of his intestate. This was the turning point in the case, and the Court observes that "the principal question in the case depends upon the fact that, after the bond and mortgage passed into the hands of James Cathcart, as administrator, he transferred them to a creditor of his intestate." It was no hardship to the defendant, Richard Cathcart, because he was a co-administrator and knew of the transfer of the bond and mortgage and had it in his power to protect himself.

But to apply the principle to every case would work great hardship, as in the case before us. This is no proceeding on the part of creditors or distributees against a debtor-administrator simply, but a proceeding by an administrator *de bonis non* against the sureties of that debtor-administrator to recover a debt accrued in the lifetime of the intestate. Here was no transfer of the note to a creditor of the estate, or even to a distributee. And while the creditors or distributees might, had they been so disposed, have considered this a subsisting debt by sealed note as against the debtor-administrator, instead of assets realized at the maturity of the note, yet we submit that the sureties stand on higher ground. The debtor-administrator, by turning the note over to the administrator *de bonis non*, after quietly holding it and treating it as paid for eleven years, during which time he becomes insolvent, *might* revive the note as against himself; but we submit that he could not do so as against his sureties thereon. These sureties were powerless to protect themselves, even had they known that the debt was not paid. They could not do otherwise than stand by and see the administrator and his sureties become hopelessly insolvent, without the ability to compel the payment of this note; and even had they possessed power to compel payment, they might well have deemed themselves secure under the broad general expressions used in the cases of *Schnell* vs. *Schræder* and *Griffin* vs. *Bonham, supra.* On the other hand, those interested in the estate have been guilty of great laches. They had it in their power to secure this debt by calling the administrator to account whilst he and his bondsmen were solvent. They did not do so, and, according to the well-established principle of equity, that when one of two innocent parties must suffer loss, and one of them might have protected himself and did not, whilst the other *could* not, the loss must fall upon the one who might have and did not protect himself. Indeed, this note

appears to have been taken by E. O. Jacobs in a fiduciary capacity, and, properly speaking, should have been turned over to his testator's administrator *de bonis non* with the will annexed. It would then, no doubt, have been collected from the principal. That it was not so turned over is strong evidence that John Charles, the administrator, with the will annexed, of E. O. Jacobs' estate, regarded and treated it as so much cash, and that the parties interested in the two estates of father and son so regarded it.

But, again, the effect of appointing John Charles, the principal on the note, to be administrator of the payee's estate, was precisely that which occurs when an administrator who has a fund in his hands belonging to his intestate's estate becomes guardian to a minor to whom that fund is going. In that case, the sureties on the guardianship bond become liable for the fund and the sureties on the administration bond are released.—*Johnson* vs. *Johnson,* 2 Hill Ch., 277; *Simpkins* vs. *Cobb,* 2 Bail., 60; *O'Neal* vs. *Herbert,* Dud. Eq., 30; *O'Neal* vs. *Herbert,* McMul. Eq., 495.

So here the sureties on the administration bond became liable and the sureties on the note were released. The administration bond goes to the entire personal estate. It is for the faithful administration of the whole, not a part, and John Charles, the administrator, could administer this note only by regarding it as cash or by paying it. He could no more sue the sureties than he could sue himself. It is unnecessary to discuss the question whether he might not have discharged himself by turning it over to a creditor or legatee of the estate in discharge of their claims against the estate, for there is not even a *pretense* that he did either.

There is, then, no escaping the proposition that the sureties on the administration bond are liable and not the sureties on the note. The note was either administered as so much cash or it was unadministered, and in either event necessarily went into the decree against the administrator and the sureties on his bond in his accounting before the Judge of Probate. The liability fell first upon the administrator, and he failing to make it good, it fell upon the sureties on his bond.

*Sullivan & Stokes,* contra :

1. The bond of Charles and his securities to E. O. Jacobs, deceased, on whose estate the said John Charles administered, with will annexed, was never paid by Charles or his securities, all of

whom were insolvent, and the respondent, as administrator *de bonis non* of E. O. Jacobs, deceased, was entitled to recover the amount of the principal and interest of said bond and costs of suit, as the Court ruled and the jury found. See the facts of the case at large and the verdict.

2. On the 1st day of April, 1872, the letters of administration on the estate of E. O. Jacobs, previously granted to John Charles, were revoked, and on the same day administration *de bonis non* was granted to Richard H. Jacobs, respondent, upon the same estate, and the bond in question turned over to him by the Probate Court, when said bond was first embraced in the inventory of E. O. Jacobs' estate, which was done by respondent. And the principal and sureties to the first administration bond all being insolvent, this suit was instituted by respondent to recover said debt of Charles and his two sureties therefor, which was his individual debt to his testator, E. O. Jacobs; and the mere fact that John Charles became administrator of E. O. Jacobs, his deceased creditor, did not, under the circumstances and law of the case, extinguish the debt or discharge him or his sureties from the payment thereof.

Authorities in support of this proposition:

"Where the debtor is appointed executor, the suspension of the remedy is the voluntary act of the creditor, and therefore the action is forever gone; but the effect is different where the remedy is suspended by act of law. Thus, if administration of the effects of a creditor be committed to the debtor, this being by act of law, is only a temporary privation of the remedy. Therefore, if the obligor of a bond takes out administration to the obligee and dies, the administrator *de bonis non* of the obligee may maintain an action for such debt against the executor of the obligor. Again, if the executrix of the obligee marry the obligor, such marriage is no release of the debt, for the testator has done no act to discharge it. Consequently the remedy is merely suspended by the legal effect of the coverture, and on her death the administrator *de bonis non* will be equally entitled to that debt as to any others outstanding."— Williams on Ex., 1183.

In *Wankford* vs. *Wankford*, (1 Salk., 303,) Powell, J., said: "That if administration of the goods, &c., of the obligee was committed to the obligor, that was but a suspension of the action and no extinguishment of the debt; but the reason of that is, because the commission of administration is not the act of the obligee; and so is 8 Co., 136, Sir John Needham's case."

In *Wankford* vs. *Wankford,* Holt, C. J., uses the following language on page 306 : "Suppose the obligor takes administration to the obligee; in that case the same person has a right to receive the money and is to pay it, and yet that will be no extinguishment; and so is 8 Co., 136, Sir John Needham's case; but the reason of the diversity is, because the administration is made such by act of law, but the executor by the act of the testator, and for that reason it is no extinguishment."

"The obligor of a bond administered to the obligee, and died. A creditor of the obligee having obtained administration *de bonis non*, brought an action for such debt against the executors of the obligee. It was successfully maintained."—Peters. Abridg., Title Ex., 288.

And the same author, in note on page 287, says : "But the case of an administrator is different, for he is not appointed by the deceased; and, therefore, it would be very hard if it were in the power of the Ordinary to release any debt due to the estate by committing administration to the debtor."

February 15, 1876.   The opinion of the Court was delivered by

Moses, C. J.   The action was a sealed note, dated October 20, 1860, payable at twelve months to E. O. Jacobs, executor, and signed by John Charles, J. L. Woodside and Thomas Goldsmith. Jacobs was the executor of the last will and testament of his father, William Jacobs, and in that capacity took the note.   Before its maturing, Jacobs died, and letters of administration, with the will annexed, on his estate were granted to Charles, the principal of the note, who continued as such administrator from 1861 to April 1, 1872, when his letters were revoked, and administration *de bonis non*, with the will annexed, was granted to the respondent, (the plaintiff below,) to whom the note was turned over, and this action soon after instituted.

On the trial, it was contended by the defense that the note in question became cash in the hands of John Charles as soon as he was made administrator of the estate of the payee, E. O. Jacobs, and that he could be made liable therefor only through his administration bond; that the sureties on the note had been discharged by operation of law and were not liable.   It was shown upon the trial that John Charles was solvent at the time of administration

granted; but both he and his sureties were insolvent when it was revoked.

His Honor the presiding Judge was requested by the appellants to charge in conformity with the views thus submitted, and his refusal to do so is the error here assigned.

It is not to be denied that at common law, where the testator appointed his debtor executor, the debt was considered discharged to the same extent as if a gift of it had been made by the will.— *Wankford* vs. *Wankford*, 1 Salk., 307; *Freakley* vs. *Fox*, 9 B. and C., 130. The rule rested on the assumption that by the act a gift was intended, and if there was a deficiency of assets to satisfy the debts of the testator, the debt of the executor was considered as assets in his hands, subject to the discharge of debts.—See Will. on Ex., 1126.

To what extent the principle may now prevail in England, modified as it has been in its application by decisions both of the Courts of equity and law, from time to time, it is not necessary to inquire, for since 1789 the rule has had no force in this State. An Act passed in that year, (5 Stat., 111,) and embodied in the General Statutes, (Section 2, Chapter 87,) declared that the appointment of a debtor to the testator as his executor "shall not be construed in law or equity to be a release or extinguishment of the debt, unless the testator shall in his will expressly declare his intention to release the same." The rule which obtained in the English Courts as to executors was never applied to an administrator debtor to the intestate, for his appointment is by operation of law, and cannot be referred to the act of the creditor.—Needham's case, 8 Coke, 138; *Wankford* vs. *Wankford*, *sup.*

The executor or administrator, thus combining in himself the character both of debtor and creditor, thereby preventing all remedy for the recovery of his debt to the estate, which in law he alone represents, so far from being discharged or released by the mere act of his appointment, or the grant of letters testamentary or of administration, is regarded as holding the amount as cash in his hand, as the other effects of the decedent, *subject* to a due course of administration. His relation to the debt is changed by the very nature of his office. He cannot occupy a position which, on the one hand, would impose upon him the obligations of a debtor, while on the other it would entitle him to the rights of a creditor. To prevent the loss which might otherwise follow from the complete

suspension of the remedy, the debt must be regarded as assets either in the hands of the administrator or the executor, and the bond of the former, in his case, will stand as its security. It is not necessary to multiply authorities on the point. A reference to *Schnell* vs. *Schroder*, (Bail. Eq., 335,) *Griffin* vs. *Bonham*, (9 Rich. Eq., 71,) *Winship* vs. *Bass et al.*, (12 Mass.,.198,) is enough.

The reason of the rule finds sanction in the principle which holds that where an administrator has in his hands a fund belonging to a distributee, of whom he is afterwards appointed guardian, it is at once transferred to him in his right as guardian, and the sureties on his administration bond are discharged.—*Johnson* vs. *Johnson*, 2 Hill Ch., 227; *Simkins* vs. *Cobb*, 2 Bail., 60; *O'Neal* vs. *Herbert*, Dud. Eq., 30; *O'Neal* vs. *Herbert*, McMull. Eq., 495.

There is nothing in the case to permit the inquiry as to what might have been the effect of a transfer of the note by the administrator to a creditor of the estate, or into any act on his part or that of the creditors or distributees, recognizing the note as an existing demand, and a direct appropriation of it to the debts of the intestate, which might bring it within the exceptions referred to in *Clowney* vs. *Cathcart*, (2 S. C., 395.) On the contrary, here it is not denied that the note was retained by the administrator, John Charles, for eleven years, when his letters were revoked, and administration *de bonis non* of the estate of E. O. Jacobs, with the will annexed; granted to the respondent, Richard H. Jacobs, to whose hands the note in some way came.

The motion for a new trial is granted.

*Wright*, A. J., and *Willard*, A. J., concurred.